[No. 7,199.—Department One.]

SAMUEL H. MEEKS v. THE SOUTHERN PACIFIC RAILROAD COMPANY.

NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—RAILROAD COMPANY.—In an action for damages for the crushing of the plaintiff's foot by the defendant's train, held, upon the facts stated in the opinion, that the evidence was sufficient to justify a finding of negligence on the part of the employees of the defendant; and held, further, that the case does not show such contributory negligence on the part of the plaintiff as should preclude a recovery by him.

ID.—ID.—ID.—The rule that the plaintiff cannot recover, if his own wrong as well as that of the defendant has conduced to the injury which he has sustained, is confined to cases where his wrong or negligence has immediately or proximately contributed to the result.

LAW OF THE CASE—CASE LIMITED.—The decision upon the former appeal in this case (Meeks v. S. P. R. R. Co. 52 Cal. 604), being upon a different state of facts, held not to apply.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Eighteenth District Court, San Bernardino County. McNEALY, J.

A petition for rehearing in Bank was filed in this case, after the decision, and denied.

The greater part of the argument of counsel turned upon questions of fact, and is omitted.

The Court, upon the motion of plaintiff, gave the following instruction, the fifth paragraph being the portion of the instruction referred to in the argument of appellant's attorneys:

One of the questions submitted to you is, whether the injuries of plaintiff were caused through the negligence of defendant's employees.

It is a general rule of law, that where a plaintiff has contributed to his injuries, by his own negligence, he cannot recover for such injuries, though caused to him in part by the negligence of others. But there may be cases where the negligence on the part of the other party may be so great and gross, and the relative situation and circumstances of the parties such, that the law would hold a defendant responsible, even though the plaintiff may himself also have been at fault.

In the first place, the law requires that defendant should have on each locomotive engine a bell of twenty pounds weight, and that it be rung at a distance of at least eighty rods from the place where the railroad crosses any highway, and be kept ringing until it has crossed such highway. And if plaintiff was upon a public highway, and the defendant's engine was approaching this highway, without its bell having been rung as above stated, and it ran over said plaintiff while upon such highway, then defendant would be liable to him for his injuries, unless it appears that plaintiff was guilty of want of ordinary care in causing or bringing about such injuries, or his parents have been guilty of the want of ordinary care and prudence in protecting and looking after him. Ordinary care means that degree of care and prudence which men of common understanding usually exercise about their own affairs. But in case of very young children, ordinary care means such care as children of that age, and of such discretion and understanding as is common to children of that age, are able and do usually take of themselves. But you should bear in mind, that if plaintiff's parents were negligent, and did not use ordinary care and prudence in protecting and looking after him, then any injury caused to him by such neglect would be the same as though it occurred to him through his own neglect.

But even though you should find that plaintiff, either through his own or his parents' neglect, was upon defendant's railroad track, and that he there negligently and carelessly exposed himself to be run over by its engine, still, if you should believe that he did not know of the approach of the train in time to have

avoided the injury; and you also believe that the employees having charge of the train learned or knew of any obstruction upon said track, or knew any fact in connection therewith, which afterwards proved to be plaintiff himself; and such knowledge or information was such as would have put a man of ordinary prudence on his guard, and would have caused a person of such ordinary prudence to have stopped said train; and that after acquiring such knowledge, said emyloyees could have stopped said train, by the use of ordinary exertion and care, in time to have prevented the injury, and they failed to do so, and thereby caused said injuries—then you should find a verdict for plaintiff.    But if you should not find the facts to be as thus stated, and you should find that plaintiff or his parents, by his or their neglect, contributed to his injuries, then you should find for defendant.

The obstacle or obstruction referred to here is such as in the way it appeared to the employees of the defendant would have aroused the suspicions of, or fear of danger in, a man of ordinary prudence, and have caused him to have stopped or slacked up the train, in order to ascertain what it really was before proceeding past it.

*Glassell, Smith & Smith*, for Appellant.

Upon the evidence of contributory negligence on the part of plaintiff and plaintiff's mother, the Court should have set aside the verdict, and granted a new trial.. The evidence of such negligence is as clear on this appeal as when the case was here before.    (*Meeks* v. *The Southern Pacific R. R. Co.* 52 Cal. 602; *Needham* v. *S. F. & S. J. R. R. Co.* 37 id. 419; *Gray* v. *Winter*, 34 id. 153; *Kline* v. *C. P. R. R. Co.* 37 id. 400; *Flynn* v. *S. F. & S. J. R. R. Co.* 40 id. 14; *Flemming* v. *W. P. R. R. Co.* 49 id. 253.)

The portion of the instruction of the Court contained in the fifth paragraph is in conflict with all the authorities.    (Sherman and Redfield on Negligence, § 25; *Sims* v. *M. & N. R. Co.* 28 Ga. 95; *Holmes* v. *Central R. Co.* 37 id. 596; *Donnell* v. *P. & W. R. Co.* 6 R. I. 211.)

*C. W. C. Rowell*, and *Andrew B. Paris*, for Respondent.

The defendant was guilty of negligence that proximately and directly contributed to the injury.

First—In not ringing the bell nor sounding the whistle.

Second—In paying no attention after seeing an obstruction upon the track five hundred feet distant, until directly upon it, and in not keeping a proper lookout on approaching a crossing by a public highway.

(Code Civ. Proc. § 486; 5 South. L. R. 703, 708; *Wilds* v. *Hudson R. R. Co.* 33 Barb. 503; Sherman and Redfield on Negligence, §§ 477, 479, 481, 484, 485, 493; *Lafayette R. R. Co.* v. *Adams*, 26 Ind. 76; *Murray* v. *Railway Co.* 10 Rich. 227; Thompson on Negligence, 507, 419; *East Tenn. R. R. Co.* v. *St. John*, 5 Sneed, 524.)

We deny that the plaintiff was negligent or asleep on the track; and the facts of the case show otherwise.

But admitting that the plaintiff was a trespasser, a wrongdoer, and even asleep upon the track at the time the injury occurred—yet notwithstanding, if the defendant by the use of ordinary care and diligence could have discovered the plaintiff in time to have stopped the train and prevented the injury, and did not do so, the defendant is liable.

(*Richmond* v. *Sac. V. R. R. Co.* 18 Cal. 353; *Needham* v. *S. F. & S. J. R. R. Co.* 37 id. 419; *Kline* v. *C. P. R. R. Co.* 37 id. 406; *Flynn* v. *S. F. & S. J. R. R. Co.* 40 id. 19; *Hearne* v. *S. P. R. R. Co.* 50 id. 482; *Schierhold* v. *N. B. & M. R. R. Co.* 40 id. 455.)

Ross, J.:

At the time of the injury for which this action was brought, the plaintiff, an infant of between six and seven years of age, was residing with his parents near the railroad of the defendant, and but a short distance from where a public highway crossed the railroad track. There is testimony in the record tending to show that shortly before the accident the plaintiff was at play in the yard of his parents with another boy about nine years old, the son of a Mrs. Poole. That this lady and the

plaintiff's mother were in the house, when Mrs. Poole sent her son to hitch a horse—it being necessary for him to cross the railroad track in order to do so. That the plaintiff followed young Poole, and on reaching the track became dizzy, and fell down on it at a point about fifteen feet from where the highway crossed the track. That he remained there either in that condition or asleep until, shortly afterwards, a construction train of the defendant came along, on an up-grade, at the rate of about eight miles an hour, and crushed one of the plaintiff's feet, necessitating amputation, and otherwise seriously injuring him. It also appears that the plaintiff had, on two or more previous occasions, fallen on the ground dizzy, and then asleep, of which circumstance his mother was aware.

When the case was last here (*Meeks* v. *S. P. R. R. Co.* 52 Cal. 604), the facts, as made to appear, and on which it was held that the plaintiff was not entitled to recover, were thus stated by the Court: "The plaintiff, an infant of some six years, seems to have been permitted by his parents to make use of the roadway of the defendant as a play-ground, and to lie down on the railroad track unattended. As to whether he was asleep upon the track, or awake, there is some conflict in the evidence. But this is not material; for in either case, such conduct amounted to negligence *per se*, which would defeat a recovery by the plaintiff here. It should be observed, in this connection, that there is no evidence whatever of the lack of diligence and due care upon the part of those in charge of the train. The plaintiff was lying on the track, parallel with the rails; he was discovered by the engineer and lookout at some distance ahead; but, notwithstanding a continued scrutiny exercised by them, they were unable to discern that the object at which they were looking was other than a brush, or some insignificant obstruction upon the track. When they did discover that a child was lying there, they used every endeavor to slow up the train, but it was then too late to prevent the accident by any, even the utmost, effort upon their part."

The facts as made to appear in the record now before us differ from the facts then appearing, in many material respects.

As the case is now presented, it does *not* appear that the plaintiff was permitted by his parents to make use of the road-

way of the defendant as a play-ground, or to lie down on the railroad track unattended, nor at all. On the contrary, the plaintiff's mother testified that she never allowed him to play on the track, and the plaintiff himself testified that when he went there for that purpose his mother whipped him for doing so. It appears, however, that the plaintiff's mother had on several previous occasions sent him down the track a short distance, to Colton, with messages; and some of the witnesses also testified, that, when the road was being built, the plaintiff was in the habit of playing around there while the men were at work.

In another important respect, the facts as now made to appear differ from those presented on the former appeal. Then, as observed by the Court, there was " no evidence whatever of the lack of diligence and due care upon the part of those in charge of the train."

Not so, however, now; for there is in the record testimony on the part of the plaintiff tending to show that at the place the injury occurred, and for a considerable distance beyond, the road of the defendant was perfectly straight, and free from weeds and other like obstructions; that the day was very clear, and that at the time of the injury the plaintiff could have been seen and recognized as a boy on the track at a distance of from three hundred to three hundred and fifty yards. This testimony undoubtedly tends to show negligence on the part of the employees of the defendant. But it is greatly strengthened by the testimony of some of the *defendant's* witnesses. It appears from their testimony that there were on the engine at the time of the injury three persons—Jackson, the engineer; Holmes, the conductor; and a fireman. The engineer had control of the engine, and it was his duty to keep a lookout. Yet Holmes testified that he himself saw the plaintiff at a distance of four or five hundred feet ahead, but supposed he was a bunch of leaves or weeds, or some other insignificant object, until they got within about one hundred and fifty *feet* of the plaintiff, when he discovered he was a child, and *then* called out to the engineer, " Murder " ; *and that up to the time that he, Holmes, called out " murder," the engineer had made no demonstration that there was anything on the track.* The testimony also tended to show that the whistle was not blown nor the bell rung,

although the plaintiff lay within a few feet of where a public highway crossed the railroad track. We think the evidence amply sufficient to justify the finding of negligence on the part of the employees of the defendant.

The question remains, Does the case show such contributory negligence on the part of the plaintiff or his parents as will preclude a recovery by him?

In our opinion, the doctrine of the cases of *Needham* v. *S. F. & S. J. R. R. Co.* 37 Cal. 409, *Kline* v. *C. P. R. R. Co.* id. 400, and the other cases in this Court approving them, determines the question in the negative. Said the Court in *Needham* v. *S. F. & S. J. R. R. Co.*: "No more in law than in morals can one wrong be justified or excused by another.

"A wrong-doer is not an outlaw, against whom every man may lift his hand. Neither his life, limbs, nor property are held at the mercy of his adversary. On the contrary, the latter is bound to conduct himself with reasonable care and prudence, notwithstanding the fault of the former; and if by so doing he can avoid injuring the person or property of the former, he is liable if he does not, if by reason thereof injury ensues." Referring to the rule adopted in New York, the Court proceeds: "The error of the New York courts lies in the fact, that they ignore all distinction between cases where the negligence of the plaintiff is proximate, and where it is remote, and in not limiting the rule, which they announce, to the former." The Court then quotes approvingly from the opinion of the Supreme Court of Connecticut, in the case of *Isbell* v. *New York & New Haven Railroad Company*, 27 Conn. 404, language which we think appropriate to the case under consideration. Said the Court there: "A remote fault in one party does not, of course, dispense with care in the other. It may even make it more necessary and important, if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated. Common justice and common humanity demand this, and it is no answer for the neglect of it to say that the complainant was first in the wrong, since inattention and accidents are to a greater or less extent incident to human affairs. Preventive remedies must, therefore, always. be proportioned to the case in its peculiar circumstances—to the imminency of the danger,

the evil to be avoided, and the means at hand of avoiding it. And herein is no novel or strange doctrine of the law ; it is as old as the moral law itself, and is laid down in the earliest books on jurisprudence.  A boy enters a door-yard to find his ball or arrow, or to look at a flower in the garden ; he is bitten and lacerated by a vicious bull-dog; still, he is a trespasser, and if he had kept away would have received no hurt.  Nevertheless, is not the owner of the dog liable?  A person is hunting in the woods of a stranger, or crossing a pasture of his neighbor, and is wounded by a concealed gun, or his dog is killed by some concealed instrument, or he is himself gored by an enraged bull ; is he in all these cases remediless because he is there without consent?  Or an intoxicated man is lying in the traveled part of the highway, helpless, if not unconscious: must I not use care to avoid him?  May I say that he has no right to incumber the highway, and therefore carelessly continue my progress, regardless of consequences?  Or, if such a man has taken refuge in a field of grass or a hedge of bushes, may the owner of a field, knowing the fact, continue to mow on or fell trees, as if it was not so?  Or, if the intoxicated man has entered a private lane or byway, and will be run over if the owner does not stop his team which is passing through it, must he not stop them?  These are instances, I am aware, of personal rights; but what is true in relation to the person is essentially true in relation to dumb animals and other kinds of property, though, perhaps, the rule would be applied in the latter case with less strictness.  It must be so, that an unnecessary injury negligently inflicted in these and kindred cases is wrong, and therefore unlawful."

*Kline* v. *C. P. R. R. Co. supra*, was an action to recover damages for personal injuries sustained by the plaintiff by reason of his having been, as alleged, wrongfully expelled from the cars of defendant by the conductor, while the cars were in motion.  The Court there said : "Although the plaintiff was wrongfully upon the cars, the conductor was bound to exercise reasonable care and prudence in removing him.  The rule that the plaintiff cannot recover if his own wrong, as well as that of the defendant, has conduced to the injury which he has sustained, is confined to cases where his wrong or negligence has

immediately or proximately contributed to the result.   We had occasion to consider this question in the case of *Needham* v. *San Francisco & San José Railroad Company, post,* and we there reached the conclusion just stated.   If the plaintiff be in the wrong, yet if his wrong or negligence is remote—that is, does not immediately accompany the transaction from which his injury resulted—the defendant cannot excuse himself on the score of mutuality, nor absolve himself from his obligation to exercise reasonable care and prudence in what he may do.   In getting upon the train while it was going at a speed of ten miles an hour, the plaintiff was negligent, even though he attempted to do so as a passenger, with the intention to pay a fare ; and if he had failed in achieving a safe landing, and had fallen in the attempt, no blame or liability could have been charged to the account of the defendant.   If, as was doubtless the case, he got upon the car, as boys sometimes will, with intent to enjoy the stolen pleasure of a free ride to Front street, he came as a trespasser, and doubtless the defendant, acting contemporaneously, could have legally prevented him from getting on the car, by the use of such force as may have been requisite, without becoming legally responsible, or morally to blame, for any injury which he might have sustained.   And if he succeeded in getting upon the car without opposition, the defendant doubtless had the right to eject him by force, if force was necessary ; but it was bound to exercise the right with ordinary care and prudence, and it had no right to eject him under circumstances which would endanger his personal safety. If the train was going at a speed which would render it unsafe for him to leave the car, it was the duty of the defendant, if determined to put him off, to stop or ' slow up ' sufficiently to allow him to descend in safety, by the exercise of reasonable care and prudence on his part.   Although his entry upon the car was a trespass, yet if it was an accomplished fact before the conductor attempted to interfere, his entry did not directly conduce to the injury which he sustained, but was, in the sense of the rule under consideration, only its remote cause, and did not, therefore, absolve the conductor from the duty of observing reasonable care and prudence in putting him off the train."

In our opinion, an application of the principles announced in

these cases to the facts of the case before us, renders the defendant liable for the injuries sustained by the plaintiff. The instructions of the Court below were in accordance with these views, and the judgment and order are therefore affirmed.

MCKINSTRY, J., and MCKEE, J., concurred in the judgment.