[Civ. No. 7423. First Appellate District, Division One.—May 27, 1931.]

NAHLDENE ABBOTT, a Minor, etc., Appellant, v. MILTON CAVALLI et al., Respondents.

Norman S. Menifee for Appellant.

J. Hampton Hoge and A. Dal Thomson for Respondents.

KNIGHT, J.—Plaintiff, a minor, through her guardian *ad litem*, brought this action to recover damages for personal injuries sustained by her while riding in an automobile driven by the defendant Milton Cavalli, also a minor. There were two other occupants of the car, another girl and a boy named Howard Keplinger, whose father owned the automobile. The boys and their parents were joined as parties defendant. The action was tried before a jury and a verdict rendered in favor of the defendants, and from the judgment entered thereon the plaintiff appeals.

The accident happened on the highway near Redwood City about 10:30 o'clock at night. The occupants of the automobile, after attending a school dance, went for a ride, and at the time of the accident were taking plaintiff home. They passed another automobile traveling in the same direction (north), driving to the left-hand side thereof, immediately following which the car driven by Cavalli left the highway on the right-hand side, climbed the curb and struck a telephone pole. As a result of the crash plaintiff suffered a number of serious cuts and bruises. Cavalli testified that he was driving between 30 and 35 miles an hour at the time, that he did not see the pole until it was too late to avoid hitting it, and that he was unable to account for the car leaving the highway except that he looked momentarily at his wrist watch.

The date of the accident was June 1, 1929; and plaintiff's complaint was filed on July 2, 1929, the cause of action stated

therein being based on allegations of ordinary negligence of the driver of the car. In June, 1929, the Governor approved the enactment of section 141¾ of the California Vehicle Act (Stats. 1929, p. 1580), which took away the right of action of a guest in a vehicle to recover damages for personal injuries based on ordinary negligence of the driver, but permits such actions to be maintained where the injury to or death of the guest is proximately caused by the intoxication, wilful misconduct, or gross negligence of the owner, driver, or other person responsible for the operation of such vehicle. The provisions of said section became operative on August 14, 1929, and in November, 1929, plaintiff amended her complaint by adding a second cause of action thereto based on allegations of gross negligence of the driver. The action came on for trial on December 2, 1929, but before any evidence was taken plaintiff dismissed the first cause of action, based on ordinary negligence, and went to trial on the issues raised by the second cause of action, based on gross negligence. It is evident that the parties and the court assumed that the provision of said section 141¾ of the Vehicle Act were retrospective in their operation, and that therefore, being a guest at the time of the accident, it was essential for plaintiff to establish gross negligence on the part of the driver before she was entitled to damages; and the trial was had, and at the request of both parties the jury was instructed, pursuant to such theory. But in July, 1930, approximately seven months after the entry of judgment, the Supreme Court held, in the case of *Callett* v. *Alioto*, 210 Cal. 65 [290 Pac. 438], that the provisions of said section were not retrospective in their operation and did not in any way affect causes of action existing at the time the statute took effect. Plaintiff now contends that since the action was tried and determined on an erroneous theory, the judgment should be reversed.

 There would be much force in plaintiff's contention were it not for the fact that she invited the error of which she now complains. As shown, she amended her complaint so as to bring in a second cause of action based on gross negligence, and then eliminated entirely by dismissal all claim for damages based on ordinary negligence. Furthermore she proposed a number of instructions, based upon such erroneous theory, which the court gave. The first one read

in part as follows: "This is an action brought by the plaintiff to recover damages for personal injuries alleged to have been occasioned by the gross negligence and carelessness of the defendant Milton Cavalli in the operation of an automobile in which plaintiff was riding." And again: "You are instructed that a person riding in an automobile as the invited guest of the owner thereof is entitled under the law of this state to recover damages from her host if she proves by a preponderance of evidence that the host or driver of the automobile was guilty of gross negligence in the operation of the automobile, and that such gross negligence proximately caused injuries to her, unless the guest is guilty of contributory negligence." And the following are excerpts from other instructions given at her request: "I instruct you that the plaintiff is bound to prove the allegations in her complaint by a preponderance of the evidence only. . . . If you find from the evidence that the plaintiff, Nahldene Abbott, received the injuries complained of as a proximate result of gross negligence upon the part of the defendant Milton Cavalli in the operation of his automobile, and if you further find", etc. She also proposed an instruction reading as follows: "*The words 'gross negligence' as that term is used in these instructions, means a failure to exercise slight care;* whether or not defendant Milton Cavalli was guilty of gross negligence is a question entirely for your determination from the evidence presented to you; of this you are the sole judges." (Italics ours.) The italicized portion, defining gross negligence was not given because the substance thereof was embodied elsewhere in the court's charge, but the remainder of the instruction was given as proposed.

In the state of the record above set forth it is obvious that plaintiff is not in a position to claim error, for it has long been the rule that a party must abide by the consequences of his own acts and cannot seek a reversal on appeal for errors which he has committed or invited. In other words, one whose conduct induces or invites the commission of error by the trial court is estopped afterward from taking advantage of such error. (2 Cal. Jur. 495.) Among the cases holding generally to that effect are *City of Oakland* v. *Wheeler*, 34 Cal. App. 442 [168 Pac. 23, 30]; *Merrill* v. *Kohlberg*, 29 Cal. App. 382 [155 Pac. 824]; *Seale* v. *Carr*, 155 Cal. 577, 578 [102 Pac. 262]; *Smith* v. *Arm-*

*strong,* 85 Cal. App. 624 [260 Pac. 347]; *People* v. *Gifford,* 54 Cal. App. 182, 183 [201 Pac. 469]. In dealing with the same point in the case of *City of Oakland* v. *Wheeler, supra,* the court said: ''When a case has been tried upon a well-defined theory, accepted by all parties and the court as well, counsel cannot after years have elapsed raise for the first time in this court the correctness of this theory. . . . Counsel are bound by a theory in which they plainly acquiesced until the subsequent decision of cases in the Supreme Court of California, which the trial court did not at the time of the trial have as guides, indicated that this theory was incorrect.'' And in *Merrill* v. *Kohlberg, supra,* the rule is stated thus: ''After having led the court into error and compelled counsel for plaintiff to adopt and conform to an erroneous theory for the trial and determination of the case, it surely does not lie in the mouth of the defendant to insist in support of the appeal that the case should have been tried upon the theory first adopted by the plaintiff, which counsel for the defendant now contends to be the correct one.''

▮ True, the court gave certain instructions proposed by defendants based also upon the theory of gross negligence, and which embodied among other things the provisions of said section 141¾ of the Vehicle Act; but plaintiff cannot complain of those instructions, because they were not only in complete harmony with the ones requested by plaintiff, but they conformed to the issues presented by the amended complaint, and were entirely consistent with the theory upon which, at plaintiff's invitation, the action was heard and determined. (*Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48 [186 Pac. 772]; *Gray* v. *Ellis,* 164 Cal. 481 [129 Pac. 791].)

▮ There were three other instructions proposed by plaintiff which the court refused to give, and such refusal is assigned as error. The first was in effect an amplification of the definition of gross negligence. This instruction might well have been given, but inasmuch as the term gross negligence was clearly and correctly defined in the court's charge in language substantially the same as that embodied in plaintiff's proposed instruction, it cannot be said that plaintiff suffered any prejudice by the refusal to give her instruction upon the same subject. ▮ The second instruction related to ordinary negligence. Consequently it was

not based on the issues of the case and its refusal was justified. And the propriety of the third instruction was destroyed by the latter portion thereof, which, too, related to the doctrine of ordinary negligence. Objection is also made to the modification of another instruction proposed by plaintiff, but such modification was made necessary in order that the instructions conform to the theory upon which the action was presented and tried.

The next point urged for reversal is founded on a statement made by the presiding judge to the panel of jurors at the commencement of the trial. Much that was said related to the duties of the jurors generally, the importance of giving the case careful consideration and of deciding it in accordance with the evidence and the law as stated in the court's intructions. We shall refer, therefore, only to those portions of the court's remarks which are deemed to have been harmful. The record shows that the present action came on for trial during the month of December, 1929, and it appears inferentially from the judge's remarks that some members of the panel called for service in the present case had served as jurors previously during the months of February and April, and again on the Friday preceding the present trial; and after reminding them of those facts the judge stated in substance and effect that it had been necessary to set aside the verdicts they had rendered because they had not given faithful consideration to the evidence. The verdict in the case decided on the preceding Friday, it appears, was in favor of the plaintiff therein, but the results of the other trials are not made clear. The judge then proceeded to impress upon the members of the panel the importance of their duties, and among other things stated that no wrongdoing was imputed to them, but that he thought they had not given proper consideration to the evidence; and in this connection he said: "You understand, as I have always charged you in all the cases that you have had before me, that you are the exclusive judges of the facts. I cannot control your actions in that, nor do I want to, but I can control what you do, after you get through with the verdict." Then referring to the case tried on the preceding Friday, he stated that the verdict rendered therein in plaintiff's favor was not warranted by the evidence and "simply made more work

for the court, more litigation, and not much satisfaction for the litigants''. He further stated that the ''main purpose in trying a case in court is to get an honest, upright, proper, just verdict'', and after expressing his confidence in the members of the panel said that if they would decide the case only after giving due consideration to the matters before them ''we will have less trouble''. Continuing, he said in substance that during the preceding May he was doubtful about calling upon this particular panel again for service because in his opinion the juries previously selected therefrom had not given proper consideration to the facts of the case they were required to determine. And in conclusion he said: ''I am saying this because we have another important case today and others to come. If you will consider the facts submitted to you, do it properly, think about whether it is right or wrong, and then render your verdict, in nine cases out of ten if you follow that practice you will have no trouble, the court will have no trouble, the litigants will get justice and all will be better satisfied. I am not finding fault with you or scolding you, but simply say this, you have a perfect right to do what you want, but if you will think carefully of these things it will obviate a great deal of trouble in the future.'' In view of the opinion which the judge seems to have entertained that some members of the panel had not satisfactorily performed their duties in other cases, it might have been better practice perhaps, as plaintiff argues, to have dismissed the entire panel and called another; but we are not prepared to hold that the remarks complained of had the effect of interfering with that freedom of thought and action on the part of the jurors which the law vests in them as exclusive judges of the facts of the case, or that they were coerced by said remarks into rendering a verdict which in their judgment was not in accord with their views of the evidence. However, aside from these considerations, a reversal upon the ground mentioned would not in our opinion be justified for the reason that it cannot be ascertained from the record before us how many, if any, of the jurors who served in the other cases and against whom the remarks of the court were directed, were members of the jury in the present case; ▆ and moreover, as heretofore stated, the remarks to which exception is taken were delivered prior to the impanelment of the jury in the present case, and evidently plaintiff did not deem them of sufficient consequence to

assign them as misconduct, nor to ask for a dismissal of the panel. In fact, so far as the record shows, there was no indication whatever of dissatisfaction on the part of plaintiff about proceeding to trial before a jury to be selected from that panel. We are of the opinion, therefore, that by reason of such acquiescence, plaintiff is now precluded from asserting for the first time that the remarks of the court constituted misconduct.

■ Plaintiff contends also that Cavalli was guilty of negligence as a matter of law. This point, too, is made for the first time on appeal, no claim to that effect having been made at the trial of the action, nor was any instruction proposed by plaintiff to that effect. However, even conceding that the evidence would be legally sufficient to establish ordinary negligence as a matter of law, it must be remembered that the issue here was gross negligence, and we are of the opinion that under all the circumstances attending the accident the question remained one of fact for the jury's determination.

■ The liability of Howard Keplinger, whose father owned the automobile, becomes an immaterial matter in view of the verdict of the jury that the driver of the automobile was not liable.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.