[Civ. No. 32639. First Dist., Div. Four. May 3, 1974.]

PEARL SMITH et al., Plaintiffs and Appellants, v.
AMERICANIA MOTOR LODGE et al., Defendants and Respondents.

4

## COUNSEL

Garry, Dreyfus, McTernan & Brotsky, Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen and David E. Pesonen for Plaintiffs and Appellant.

Robert E. Cartwright, Edward I. Pollock, William H. Lally, Stephen I. Zetterberg, Robert G. Beloud, David B. Baum and Leonard Sacks as Amici Curiae on behalf of Plaintiffs and Appellants.

John P. Herlihy, Barfield, Barfield, Dryden & Ruane, Martin T. Ruane, Jr., and Cyril Viadro for Defendants and Respondents.

## OPINION

**CALDECOTT, P. J.**—This is an appeal from a judgment in favor of respondents in an action arising out of the death of appellants' two children.

On Saturday, November 30, 1968, the bodies of Linda and Joseph Atchan were discovered in the bottom of the swimming pool owned by respondent Americania Motor Lodge in downtown San Francisco. Linda Atchan, age 11, and her brother Joseph Atchan, age 10, were the children of plaintiffs Pearl Smith and her divorced husband, Joseph Atchan.

The children had left home between 1 and 2 p.m., destined for a laundromat a few blocks away. They had with them a wheeled shopping cart full of soiled laundry and were dressed in street clothes. When found in the pool, they were dressed in swimming suits and Linda was wearing a nose plug; the shopping cart with still-soiled laundry was just inside the pool area; and the children's clothing and shoes were neatly stacked nearby.

The pool area was bounded by a low fence constructed of an open lattice of concrete blocks. A person entering the pool area, after ascending to its level in the building, would pass through a gate situated on a landing on the stairwell. Posted just outside the gate on the landing of the stairwell was a sign warning of the absence of a lifeguard and that children should be accompanied by an adult. The sign complied with the requirements of Health and Safety Code section 24101.4.

An important question at trial was the position of a safety rope and buoys at the pool surface near the break from shallow to deep water, required by title 17, California Administrative Code section 7786. There was substantial evidence that this line was not in place when the Atchan children entered the pool. The line's importance as a life-saving device in an unattended pool was heightened in this case by evidence that the children drowned at a location in the pool where the line should have been situated.

### Burden of Proving Proximate Cause

 Relying upon *Haft* v. *Lone Palm Hotel,* 3 Cal.3d 756 [91 Cal.Rptr. 745, 478 P.2d 465], the appellants contend that the trial judge erroneously instructed the jury as to the burden of proving proximate cause. Specifically, they argue that the jury should have been told that the burden of proof on that issue would shift to defendants if the jury found that the defendants had violated section 7786[1] of title 17 of the California Administrative Code.

In *Haft* v. *Lone Palm Hotel,* a father and his young son were found drowned in the pool of a motel where they were guests. The motel had failed to provide any of the legally required safety measures for pool use, specifically Health and Safety Code section 24101.4, which provides: "Lifeguard service shall be provided for any public swimming pool which is of wholly artificial construction and for the use of which a direct fee is charged. For all other swimming pools, lifeguard service shall be provided or signs shall be erected clearly indicating that such service is not provided."

Following a defense verdict, appellants contended that the trial court erred by refusing to find that defendants' most serious statutory violation— the failure to provide lifeguard service—constituted a proximate cause of the deaths as a matter of law. The Supreme Court held that once plaintiffs proved that defendants failed to provide a lifeguard or post a warning sign, the burden of proof shifted to defendants to show that the absence of the lifeguard did not cause their deaths. (*Haft* v. *Lone Palm Hotel, supra,* 3 Cal.3d at p. 773.) The court reasoned that the absence of the lifeguard was critical because it "not only stripped decedents of a significant degree of protection to which they were entitled, but also deprived the present plaintiffs of a means of definitively establishing the facts leading to the drownings." (*Haft, supra,* at p. 771.)

---

[1]"Except for special use pools, water depth at the shallow end shall not exceed three and one-half (3½) feet. If steps extend for more than one-half (½) of the width of the shallow end, the depth of water at the base of the lowest step shall not be greater than three and one-half (3½) feet.

"From the shallow end, the pool bottom shall be sloped at a rate not to exceed: (a) For pools more than twenty (20) feet in width—one (1) foot vertically in twelve (12) feet horizontally, and (b) For pools twenty (20) feet or less in width— one (1) foot vertically in ten (10) feet horizontally.

"The above slope shall be uniform and extend to a depth of not less than five (5) feet except that the slope may extend to a depth of not less than four (4) feet six (6) inches when rope and buoys are to be continuously maintained. Wherever there is a break in slope from shallow to deep water, devices for fastening safety ropes shall be installed at least two (2) feet toward the shallow end from the break, and safety rope and buoys shall be provided."

Appellants rely on the following language in *Haft* for their contention that *Haft* is controlling in the case at bar. "In parallel terms, the shift of the burden of proof in the instant case may be said to rest on a policy judgment that when there is a substantial probability that a defendant's negligence was a cause of an accident, and when the defendant's negligence makes it impossible, as a practical matter, for plaintiff to prove 'proximate causation' conclusively, it is more appropriate to hold the defendant liable than to deny an innocent plaintiff recovery, unless the defendant can prove that his negligence was *not* a cause of the injury." (3 Cal.3d at p. 774, fn. 19.)

The case at bar differs from *Haft,* in that *Haft* involved innocent, i.e., nonnegligent decedents. In the present case, there was evidence tending to show the decedents were negligent. The decedents could not swim; they entered the pool when a lifeguard was not present; there was a sign saying the lifeguard was not on duty and the decedents could read.[2] It is fully as logical that the deaths were caused by the mere inability to swim as by the fact that the rope was missing. Here, we cannot say that there was a substantial probability that the defendants' negligence caused the accident, any more than we can say the decedents' negligence was the cause.

*Haft* relies on *Summers* v. *Tice,* 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91], *Ybarra* v. *Spangard,* 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], and *Vasquez* v. *Alameda,* 49 Cal.2d 674 [321 P.2d 1]; however, these cases, like *Haft,* involved an innocent plaintiff and a negligent defendant. All of the cases cited in support of the theory of shifting the burden of proof on the issue of proximate cause involve an innocent plaintiff (or decedent). Such is not the case here, and appellants were not entitled to an instruction shifting the burden of proof.

Further, appellants' reliance on *Haft* is misplaced. The lack of evidence of causation in *Haft* was due to the defendant's negligence in failing to provide a lifeguard. Here, it cannot be said that respondents' compliance under title 17, section 7786, would have supplied the missing evidence. That is, defendants' negligence did not make it impossible, "as a practical matter, for plaintiff to prove 'proximate causation' conclusively." Unlike

---

[2]In *Haft,* the contributory negligence of Mark Haft, age 5, was raised. The evidence showed that Mark, though not a "good swimmer," was under the direct care and supervision of his father. As stated by the court at page 777, "A careful review of the California precedent and of the case law of our sister states has not disclosed a single instance in which a young child was found negligent while following the instructions of his parent; rather, minor children have been held contributorily negligent only in situations in which the child was acting either without or contrary to parental or similar guidance."

the absence of the *Haft* lifeguard, the absence of a safety rope did not make it more difficult for appellants to prove their case.

## The Attractive Nuisance Instruction

The so-called "attractive nuisance" doctrine concerns the duty of a possessor of land to trespassing children; it has been crystallized by the American Law Institute in Restatement Second of Torts, section 339, and prior to *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], was adopted in California. (See 2 BAJI (4th ed. superseded) No. 208-208-B (1967 Cumulative Pocket Part).)

Appellants offered and the court refused an instruction based on section 339, with a modification deleting clause (c). The trial court instead instructed the jury, using the complete section 339 instruction

As will be discussed below, the appellants erred when they offered a modified version of section 339 and the trial court erred when it instructed the jury as per section 339.

The decision of *Rowland* v. *Christian, supra,* 69 Cal.2d 108,[3] in effect, abolishes the attractive nuisance doctrine in California. (See *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 4 Cal.App.3d 129, 136-137 [84 Cal.Rptr. 449].) Though the court erred when it instructed the jury pursuant to section 339 of the Restatement Second of Torts, the error was invited by the appellants. Under the doctrine of invited error, "if instructions are given by the court at the request of the opposing party, or on its own motion, the complaining party cannot attack them if he himself proposed *similar instructions.*" (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 243, p. 3057; *Abbott* v. *Cavalli,* 114 Cal.App. 379, 382-384 [300 P. 67]; cf. *People* v. *Davidson,* 25 Cal.App.3d 79, 83 [101 Cal. Rptr. 494].) Here, appellants asked that the court give the child trespasser instruction, an instruction which is no longer valid in California.

## Instruction on Contributory Negligence of the Parent

Appellants argue that the trial court erred when it instructed the jury on the contributory negligence of the decedents' mother, Mrs. Pearl Smith. They contend that (1) there was no evidence by which the jury

---

[3]*Rowland* v. *Christian* abolished the previous distinctions in the liability of an owner or occupant of premises for injuries caused by conditions or activities thereon based on the status of the person injured as a trespasser, licensee, social guest etc. Under the decision, the owner's liability is predicated upon Civil Code section 1714.

could have found that Mrs. Smith acted in a negligent manner and (2) that Mrs. Smith's alleged negligence could not be a defense in the case at bar as contributory negligence can be raised as a defense only if it involves a violation of the decedent's own duty of due care.

There was evidence on which the jury could have found appellant Pearl Smith "guilty" of contributory negligence. As appellant herself points out, she was aware of the presence of the pool and of the danger the pool presented to the children. In fact she warned them not to go there again, when she found out that they had visited the pool by themselves. It is beside the point that Mrs. Smith had no doubt that her children would obey her instructions. It is clear that in fact they disobeyed her and that because of a lack of supervision they had the opportunity to disobey her. ■ "It is the rule that the failure of a parent to supervise a child, with knowledge of existing danger, may constitute negligence which could preclude recovery on the part of the parent for the death of the child. (*Kasunich* v. *Kraft,* 201 Cal.App.2d 177, 185 [19 Cal.Rptr. 872].) . . . Parents are therefore chargeable with the duty of exercising ordinary care in the protection of their minor children. (*Seperman* v. *Lyon Fire Proof Storage Co.,* 97 Cal.App. 654 [275 P. 980]; *Healy* v. *Market Street Ry. Co.,* 41 Cal.App.2d 733 [107 P.2d 488].) Where the failure of the parents to exercise such care proximately causes or contributes to the injury or death of their child the action of the parents for damages is thus defeated." (*Cardenas* v. *Turlock Irrigation Dist.,* 267 Cal.App.2d 352, 360 [73 Cal. Rptr. 69].)

■ Whether or not the mother was guilty of negligence which proximately caused the death of her children was a question of fact for the trier of fact. The trial court did not err when it instructed the jury on contributory negligence. (*Cardenas* v. *Turlock Irrigation Dist., supra;* see *King* v. *Lennen,* 53 Cal.2d 340, 344 [1 Cal.Rptr. 665, 348 P.2d 98].)

*Instruction on Contributory Negligence of Decedents*

■ Appellants argue that the trial court erred when it instructed the jury as to the contributory negligence of the decedents. They contend that there was no evidence to support such an instruction. ■ "Assuming capability, the question of contributory negligence of a child is generally an issue to be determined by the trier of fact. Each case must be judged and decided on the facts shown by the evidence and the inferences to be drawn therefrom." (*Martinovic* v. *Ferry,* 222 Cal.App.2d 30, 35 [34 Cal. Rptr. 692].) ■ Here, there was sufficient evidence to go to the jury as to whether or not the decedents were contributorily negligent. Linda

was almost 12 years old and Joseph almost 11 at the time of the accident; both children had been warned the previous day to stay away from the pool; neither child knew how to swim; both children could have read the sign requiring that children be accompanied by an adult and could have seen the depth markers on each side of the pool.

Under the rules restated in *Haft* v. *Lone Palm Hotel, supra,* 3 Cal.3d at pages 775-777, there can be no doubt that the foregoing evidence was sufficient to require that the issues of the decedents' contributory negligence be submitted to the jury.

Appellants further contend that the jury should have been instructed that the defense of contributory negligence could not be a defense as against a statutory violation.

This, however, is not the law. In *Haft* v. *Lone Palm Hotel, supra,* 3 Cal.3d 756, the Supreme Court stated in footnote 14, page 770, the following: "This reasoning is not to imply, however, that Mr. Haft's negligence, if any, could not be considered a bar to his recovery under a contributory negligence defense. Although plaintiffs did not contend at trial, or on appeal, that the contributory negligence of the decedents, if proven, should not be available as a defense to liability, an amicus brief filed with this court urges us to hold, as a matter of public policy, that contributory negligence may not be relied on as a defense by one who is negligent by virtue of a violation of the various swimming pool regulations at issue in this case. Full analysis of this contention, however, would require a substantial reevaluation of an entire line of California cases which have generally permitted contributory negligence, as distinguished from assumption of risk (see, e.g., *Finnegan* v. *Royal Realty Co.* (1950) 35 Cal.2d 409, 430-431 [218 P.2d 17]; *Bickham* v. *Southern Cal. Edison Co.* (1953) 120 Cal. App.2d 815, 823-824 [263 P.2d 32]), to be asserted as a defense in an action grounded in the violation of a safety statute (see *Alber* v. *Owens* (1967) 66 Cal.2d 790, 798 [59 Cal.Rptr. 117, 427 P.2d 781]; *Mason* v. *Case* (1963) 220 Cal.App.2d 170, 177-179 [33 Cal.Rptr. 710]; *Mula* v. *Meyer* (1955) 132 Cal.App.2d 279, 284-285 [282 P.2d 107]). We do not believe the instant litigation, in which plaintiffs have not even raised the issue, provides a proper vehicle for such an undertaking."

In response to this quotation, appellants cite *Fonseca* v. *County of Orange,* 28 Cal.App.3d 361 [104 Cal.Rptr. 566], which they state casts doubt on the rule restated in *Haft.*

In *Fonseca,* a workman was injured falling from a bridge construction site because of the absence of a railing required by an industrial safety order. The court held that it was error to instruct the jury on contributory negligence when the only facts which might support that issue were identical to the facts supporting a defense of assumption of risk. The court noted that it is well settled that the defense of assumption of risk is unavailable in actions grounded on statutory violations. The court disclaimed any intention to eliminate contributory negligence as a defense to liability for violation of safety orders and stated the following: "The facts of this case fall squarely within the area of the 'overlap.' All of the elements of assumption of risk are present. Fonseca's undisputed testimony shows that he had actual knowledge of the danger, appreciated the nature and magnitude thereof, and voluntarily went to work on the bridge despite the danger. (See *Carr* v. *Pacific Tel. Co.* (1972) 26 Cal.App.3d 537, 542 [103 Cal. Rptr. 120]; *Vierra* v. *Fifth Avenue Rental Service, supra,* 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777]; *McDonald* v. *City of Oakland, supra,* 255 Cal.App.2d 816, 828 [63 Cal.Rptr. 593].) Such conduct, if reasonable, constitutes assumption of risk, not contributory negligence, and may not be asserted as a defense in a suit for negligence based on the violation of a safety statute or safety order. (See *Mason* v. *Case, supra,* 220 Cal.App.2d 170, 177.) Conversely, if the conduct be deemed unreasonable, it constitutes both assumption of risk and contributory negligence and, as the latter, may be asserted. (*Ibid.,* pp. 177-179.) Normally, whether or not conduct of a plaintiff was unreasonable, so as to be classified as contributory negligence barring recovery for his employer's negligence, is a question for the trier of fact. (*Gyerman* v. *United States Lines Co., supra,* 7 Cal.3d 488, 500 [102 Cal.Rptr. 795, 498 P.2d 1043]; *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409, 429.) But the policy of the safety statutes and safety orders is to protect workmen whose unequal economic power prevents them from protecting themselves. This policy would be negated by a finding that behavior such as that of plaintiff in this case was unreasonable." (*Fonseca* v. *County of Orange, supra,* 28 Cal.App.3d at pp. 369-370.)

The reasoning in *Fonseca* is inapplicable to the case at bar. In *Fonseca,* the court stated that assumption of risk is not a defense where there is a violation of safety statutes (*supra,* at p. 369). All the cases cited by *Fonseca* for the above-stated rule, however, are cases of safety statutes for the benefit of employees. (See *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409, 431.) Thus, the policy reasons behind the decision in *Fonseca* do not ap-

pear here, as decedents were not workmen coerced by the laws of economics to assume risks so that they can earn a living.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied May 22, 1974, and appellants' petition for a hearing by the Supreme Court was denied June 26, 1974.